**FIRST NATIONAL BANK OF DWIGHT, A National Banking Corporation as Guardian of the Estate of Jeramie Aimone, a Minor, Plaintiff,**

v.

**REGENT SPORTS CORPORATION, Defendant.**

**REGENT SPORTS CORPORATION, Counterplaintiff,**

v.

**Mary Ann AIMONE, Counterdefendant.**

**REGENT SPORTS CORPORATION, Third party plaintiff,**

v.

**George AIMONE, Third party defendant.**

**Wayne BRADFORD and Paula Bradford, Third party counterplaintiffs,**

v.

**REGENT SPORTS CORPORATION, Third party Counterdefendant.**

No. 83 C 4724.

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1985.

Paul E. Root, Gomien & Root, Morris, Ill., for plaintiff.

Robert J. Labate, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for third party counterplaintiffs.

Robert D. Kolar, John R. Fanone, Robert D. Kolar & Associates, Ltd., Chicago, Ill., for defendant-counterplaintiff-third-party-plaintiff-third-party-counterdefendant.

Ronald V. Hirst, Callahan, Fitzpatrick & Hirst, Oak Lawn, Ill., for counterdefendant and third-party-defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

At Wayne and Paula Bradford's Fourth of July picnic near Coal City in 1982, a group of children played "Slider Jarts." "Jarts" is a lawn dart game manufactured by defendant Regent Sports Corporation. Paula Bradford's mother had purchased the game at a Walgreen's in Joliet. One of the darts, tossed by an eight-year-old girl, lodged itself in the skull of toddler Jeramie Aimone when he wandered into its path. Allegedly he suffered paralysis on his right side at the time and still has not regained use of his right arm.

From that tragic incident 26 counts worth of claims, counterclaims and cross-claims have come before this court. Jeramie, originally through his mother and now through the First National Bank of Dwight as guardian of his estate, sued the Bradfords, Walgreen's and Regent. The Bradfords, if found liable, claimed contribution from Walgreen's, Regent and from George and Mary Ann Aimone for failure to supervise their child. Walgreen's and Regent each sought contribution from the Bradfords for entrusting the game to children and from the Aimones for failure to supervise. The Aimones countered with claims on their own behalf against the Bradfords, Walgreen's and Regent for Jeramie's medical expenses and the loss of Jeramie's society.

Today only seven counts remain. This court granted summary judgment for Regent on two of Jeramie's claims: one for an alleged violation of 15 U.S.C. § 2072, the Consumer Product Safety Act, and the other in strict liability. *Aimone v. Walgreen's Corp.*, 601 F.Supp. 507 (N.D.Ill.1985). A motion to reconsider was denied and the Aimones' cross-claims against Regent on the identical theories were dismissed for the same reasons. *First National Bank of Dwight v. Regent Sports Corp.*, No. 83 C 4724 (N.D.Ill. May 7, 1985 and June 28, 1985). One count of the Bradfords' claim against Walgreen's was also dismissed. The very substantial settlements which Jeramie, George and Mary Ann Aimone reached with both the Bradfords and Walgreen's extinguished 14 counts. Still before the court are two claims against Regent from Jeramie's amended complaint: one on a theory of breach of warranty of merchantability and the other on negligence; claims by Jeramie's parents against Regent on the same two theories; claims by Regent for contribution from each of Jeramie's parents; and a claim by the Bradfords for contribution from Regent (which has not been vigorously pursued). Regent has moved to dismiss all the counts outstanding against it at one time or another.

This court disposes of all those remaining counts today by finding as a matter of law that Regent is not liable for the injury to Jeramie. When depositions and other evidentiary materials are before the court, Rule 12(b) of the Federal Rules of Civil Procedure requires treating a motion to dismiss as one for summary judgment under Fed.R.Civ.P. 56. Under its standard, no genuine issue of material fact remains and Regent is entitled to judgment on all counts against it as a matter of law. The result on these counts of breach of warranty and negligence follows logically from the earlier summary judgment for Regent on the counts of marketing a hazardous product and of strict liability. Since Regent is not liable, its claim against the Aimones is also extinguished.

On the warranty claims, this court first of all is not sure that Jeramie was in privity with Regent. To succeed on a claim of breach of the implied warranty of merchantability imposed by the Uniform Commercial Code, Ill.Rev.Stat. ch. 26, ¶ 2–314, one first must demonstrate privity of contract with the defendant. Illinois has chosen to limit horizontal privity to a family member, household member, household guest or employee of the purchaser. Ill. Rev.Stat. ch. 26, ¶ 2–318; *Boddie v. Litton Unit Handling Systems*, 118 Ill.App.3d 520, 455 N.E.2d 142, 74 Ill.Dec. 112 (1st Dist.1983). Here, Mrs. Bradford's mother was the purchaser and Jeramie was neither her guest nor related to her. There is some evidence tending to indicate that she could be characterized as Mrs. Bradford's agent for the transaction, since Mrs. Bradford may have directed the purchase and reimbursed her for it. If not, the claim faces difficulties. Illinois definitely does not extend the warranty to bailees, borrowers or persons in analogous positions. *Zanzig v. H.P.M. Corp.*, 134 Ill.App.3d 617, 480 N.E.2d 1204, 89 Ill.Dec. 461 (1st Dist. 1985); *Knox v. North American Car Corp.*, 80 Ill.App.3d 683, 399 N.E.2d 1355, 35 Ill.Dec. 827 (1st Dist.1980).

Even if that hurdle could be met, there is no evidence that the lawn darts were unmerchantable. The issue in a products liability suit brought on breach of warranty of merchantability is essentially the same as one brought on a strict liability theory. *Nave v. Rainbo Tire Service, Inc.*, 123 Ill.App.3d 585, 462 N.E.2d 620, 78 Ill. Dec. 501 (2d Dist.1984). Goods may be unmerchantable because they are defective in some way or otherwise not fit for the ordinary uses to which such goods are put. The inquiry is nearly identical to that which determines whether an item was a "defective product unreasonably dangerous." *Rainbo Tire*, 123 Ill.App.3d at 592, 462 N.E.2d at 625, 78 Ill.Dec. at 506; White and Summers, *Handbook of the Law under the Uniform Commercial Code*, 351–356 (2d ed. 1980). This court has already determined that under Illinois law the "Slider Jart" was not unreasonably dangerous—the danger of injury is obvious to anyone who looks at one. *Aimone*, 601 F.Supp. at 515; *cf. Pitts v. Basile*, 35 Ill.2d 49, 219 N.E.2d 472 (1966) (target darts). Plaintiff has not cited and this court has not found any Illinois cases in which users of toys or games sought recovery on a warranty theory, but the Supreme Court of Oklahoma in *Atkins v. Arlans Department Store*, 522 P.2d 1020 (Okla.1974), a case cited in our previous memorandum, specifically held that lawn darts made by Regent did not breach any implied warranty. Its analysis was the same for both strict liability and warranty claims and it included a finding that "the dart was not dangerous to the extent beyond that which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics." *Id.* at 1022. *Cf. Landrine v. Mego Corp.*, 95 A.D.2d 759, 464 N.Y.S.2d 516 (N.Y.App.Div.1983) (balloon).

Neither does this case present any of the other aspects which have sometimes led to warranty liability in other jurisdictions. One possible difference between warranty and strict liability is that, at warranty, a

plaintiff may recover when injury is caused by a defect in product, whether it was unreasonably dangerous or not. White and Summers, *supra*, at 355. Jeramie's injuries, however, were not caused by the darts breaking apart or exploding or otherwise proving defective, as did the suction cup dart in *Gobin v. Avenue Food Mart*, 178 Cal.App.2d 345, 2 Cal.Rptr. 822 (1960); *reh'g* of 345 P.2d 89 (Cal.App.1959). *Cf. Strahlendorf v. Walgreen Co.*, 16 Wis.2d 421, 114 N.W.2d 823 (1962) (toy airplane); *Hartsook v. Owl Drug Co.*, 182 Cal.App.2d 150, 5 Cal.Rptr. 835 (1960) (plastic top). Nor did Regent expressly or impliedly warrant that their darts were safe for children, or fail to warn that the darts could cause injury in the hands of children. *Cf. Kelly v. Hanscom Bros., Inc.*, 231 Pa.Super. 357, 331 A.2d 737 (1974) (squeeze toy); *Tirino v. Kenner Products Co.*, 72 Misc.2d 1094, 341 N.Y.S.2d 61 (Civ.Ct.City N.Y.1973) ("glow juice"); *Crist v. Art Metal Works*, 230 A.D. 114, 243 N.Y.S. 496 (1930), *aff'd* 255 N.Y. 624, 175 N.E. 341 (1931) (toy revolver). *See generally* Annot., 95 A.L. R.3d 390 (1979) (products liability: toys and games). Indeed, Regent went to considerable lengths to make clear to purchasers that the darts were not safe for children. Immediately below "Slider Jarts," on the box, appeared in large letters, "a game for adults." Specific warnings against allowing children to use the darts appeared on the box, on the instruction sheet and on each dart. *First National*, No. 83 C 4724, mem. op. at 5 (May 7, 1985). There is simply no warranty that has been breached.

■ The result does not differ if the theory is shifted to negligence. In opposing Regent's motion, both Jeramie and his parents argue that Regent generally owed a duty to consumers and other persons potentially affected by the use of their product—a class of persons into which Jeramie falls. The question of whether it breached that duty relates to the standard of care, they maintain, and only a trier of fact can decide a reasonable standard of care. A jury, they argue, might decide that since Regent created the risk by marketing the darts, Regent should have supervised the conduct of its retailers, making periodic checks to ensure that no "Jarts" were being sold with toys. Therefore, they assert, their claim must go to trial. Summary judgment is indeed not often granted in negligence cases. However, it can and should be granted when as a matter of law a party cannot be found liable, for example, when no legal duty exists or when the party's conduct cannot be the proximate cause of the injury. *Estrada v. Schmutz Manufacturing Co., Inc.*, 734 F.2d 1218 (7th Cir.1984); *Collins v. American Optometric Ass'n*, 693 F.2d 636 (7th Cir.1982); 10A Wright, Miller and Kane, *Federal Practice and Procedure: Civil*, § 2729 (2d ed. 1983). The facts here present intervening causes which, thanks to the settlement, will not be litigated: Walgreen's alleged improper marketing of the darts, the Bradfords' allowing children access to the game, and the Aimones' apparent failure to keep Jeramie away from the area where it was played. Any of these could be grounds for finding that Regent's acts could not legally have caused the child's injuries. This court need not reach that issue, however, since in this factual situation Regent owed no duty to Jeramie.

■ Legal duty "is dictated and measured by the occasion or situation and varies in each case with the facts and circumstances." *Glenview Park District v. Melhus*, 540 F.2d 1321, 1328 (7th Cir.1976), *cert. denied* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). In Illinois, whether the law imposes a duty depends on such factors as the foreseeability of an occurrence, the likelihood of injury from that occurrence, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. Duty and proximate cause are related through the concept of foreseeability. No duty exists where it is not foreseeable that the actor's conduct would create a risk of

harm to the victim. *Osborne v. Sprowls,* 84 Ill.2d 390, 419 N.E.2d 913, 50 Ill.Dec. 645 (1981) (game of "tackle-the-football"); *Keller v. Mols,* 129 Ill.App.3d 208, 472 N.E.2d 161, 84 Ill.Dec. 411 (1st Dist.1984) (plastic floor hockey set). If Jeramie's injuries had stemmed from the unreasonable dangers of the product, or a defect in the product, he would have been a foreseeable victim of the act of manufacturing and thus would have been owed a duty not to manufacture negligently. But Regent did not negligently place a dangerous or defective item on the market because the lawn darts are not unreasonably dangerous under Illinois law and were not defective. *Cf. Pitts,* 35 Ill.2d at 51–52, 219 N.E.2d at 474. *See also Maramba v. Neuman,* 82 Ill. App.2d 95, 227 N.E.2d 80 (1st Dist.1967) (boomerang); *Miller v. Sears, Roebuck & Co.,* 250 Ill.App. 340 (1st Dist.1928) (toy pistol).

Regent also had no duty to warn of the dangers of the darts in the hands of children under Illinois law, since the dangers were obvious. *First National,* No. 83 C 4724, mem. op. at 5 (May 7, 1985); *compare Atkins,* 522 P.2d at 1022. Regent nevertheless did warn. Illinois might impose a duty on Regent here if it had marketed its lawn darts directly to children or packaged them in ways designed to appeal to children. *Pitts,* 35 Ill.2d at 54, 219 N.E.2d at 475 (*dictum*); *contra: Maramba,* 82 Ill.App.2d at 104, 227 N.E.2d at 81 (retailer not liable though it knew ten-year-old was intended user of boomerang). *Compare Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759 (1977) (slingshot, duty imposed) *with Bojorquez v. House of Toys, Inc.,* 62 Cal.App.3d 930, 133 Cal.Rptr. 483 (1976) (slingshot, duty not imposed). But in the present case, Regent structured its conduct actively to avoid sales to children. In addition to the warnings on the item itself, mentioned above, it did not sell "Slider Jarts" to toy stores, identified them in its catalog to retailers as "not a toy—not to be sold in toy departments," and. on each invoice accompanying a sale of "Jarts" placed a reminder notice to the same effect. *Aimone,* 601 F.Supp. at 513–514. It is

difficult to see what else Regent could reasonably have done except stop making lawn darts, and this court has already determined in ruling on the consumer safety and strict liability counts that making lawn darts is a permissible activity.

Regent took enough precautions to legally shift the responsibility for Jeramie's injuries to others. As a matter of law, Illinois would not impose a burden of constant surveillance of retailing practices on a manufacturer under these circumstances. *Compare Martin v. Harrington and Richardson, Inc.,* 743 F.2d 1200 (7th Cir.1984) (manufacturer not liable for injuries inflicted by nondefective handgun in hands of criminal); *Keller,* 129 Ill.App.3d at 211, 472 N.E.2d at 163, 84 Ill.Dec. at 413 (no duty to oversee game where players or their parents are capable of assessing risk); *Lance v. Senior,* 36 Ill.2d 516, 224 N.E.2d 231 (1967) (host not required to constantly monitor activities of hemophiliac child house guest). In this factual situation Regent's only duty to Jeramie was to refrain from negligence in the production of the darts. The Aimones do not allege that it breached that duty.

Reaching these legal conclusions makes it possible to find summary judgment for Regent on all counts outstanding against it. The surviving claims of both Jeramie and his parents are on the warranty and negligence theories discussed above. The counterclaim by the Bradfords alleged violation of the Consumer Product Safety Act, negligence, and strict liability, all of which are controlled by this or a previous finding of this court. Since Regent is not liable its claims for contribution are extinguished. All 26 counts are finally at rest.

## CONCLUSION

For the foregoing reasons, defendant Regent is granted summary judgment on counts VII and VIII of plaintiff First National's amended complaint on behalf of Jeramie Aimone, on counts V and VII of the complaints of George and Mary Ann Aimone, and on the counterclaim of Wayne

and Paula Bradford. Counts I and II of Regent's counterclaim against George and Mary Ann Aimone are dismissed.