BRYANT–POFF, INC.,
Defendant-Appellant,

v.

Dennis HAHN, Plaintiff-Appellee.

No. 1–382A71.

Court of Appeals of Indiana,
First District.

Dec. 22, 1982.

David E. Lawson, Howard, Lawson & Lowry, Danville, for defendant-appellant.

Leon D. Cline, Patrick W. Harrison, Cline, King, Beck, Harrison & Runnells, Columbus, Ralph M. Foley, Foley, Foley & Peden, Martinsville, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Bryant-Poff, Inc., defendant designer, manufacturer, and installer of a grain elevator leg, appeals from an adverse verdict and judgment in favor of plaintiff, Dennis Hahn, upon his complaint for negligence in a products liability action. We reverse.

## FACTS

Bryant-Poff is an Indiana corporation in the business of designing, manufacturing, and installing grain elevators, feed mills, and other large farm equipment. In 1966 Bryant-Poff installed two grain elevator legs which it had designed the previous year for the Decatur County Farm Bureau Cooperative in Letts, Indiana. Bryant-Poff had designed, manufactured, and installed similar equipment in each of the ninety-two Indiana counties as well as in a three to five state area.

On June 21, 1977, eighteen-year-old Dennis was employed by the Decatur County Farm Bureau in Letts and was sent by the manager, Randy Smith, to do maintenance work on a platform ninety feet from the ground on one of the grain elevator legs designed, manufactured, and installed by Bryant-Poff. The elevator leg was used as a vertical conveyor to transport grain or other items from ground level to storage or distribution areas. The vertical conveyor was powered by an electric motor with a chain and sprocket device located at the top of the elevator leg. The motor driven chain and sprocket were located approximately four feet above a maintenance platform which was ninety feet above ground level. Dennis had spent about an hour on the maintenance platform doing some painting when he reached his hand between the chain and sprocket to touch up a rust spot behind the sprocket. At that time the manager, from the ground floor operator's station, activated the chain and sprocket device resulting in the crushing and eventual amputation of Dennis's right arm below the elbow.

Bryant-Poff had provided at least two separate electrical cut-off devices which, if engaged, would have prevented electricity from reaching the motor that operated the chain and sprocket device above the maintenance platform where Dennis was injured. One device was a fuse disconnect in the power room located in the basement. A second electrical lock-out device was provided at the ninety-foot maintenance platform which could be engaged from the fourth rung of the ladder prior to climbing onto the platform. This mechanism was rusted at the time of the incident and testimony conflicted as to whether or not instructions had been given on the operation of these cut-off devices. However, Dennis had not been instructed in the operation of any of the safety devices by Smith or others at the facility and had never been to the platform prior to this time. There was testimony that industry standards from at least 1957 required a barrier guard to be installed on chain and sprocket mechanisms less than seven feet above such a service platform.

Dennis brought this action asserting liability on theories of negligence and strict liability under § 402 A of the Restatement (Second) of Torts against Bryant-Poff on June 6, 1979, seeking compensatory and punitive damages. Trial was begun September 28, 1981, and on October 5, 1981, the jury returned the following verdict: "We, the jury find for the Plaintiff against the defendant and assess his damages in the sum of $663,000.00." Record at 480. The trial court entered its judgment upon the verdict, and from this judgment Bryant-Poff appeals.

## ISSUES

The issues Bryant-Poff raises can be summed up as follows:

1. Did the trial court err in refusing to grant Bryant-Poff's motion for judgment on the evidence?

2. Did the trial court err in giving or failing to give certain instructions?

3. Did the trial court err in failing to grant a mistrial based upon Dennis's exhibiting an inflammatory exhibit in violation of a pre-trial order?

4. Was the award of $663,000.00 compensatory damages excessive, contrary to the evidence, and the result of passion or prejudice?

5. Did the trial court err in admitting the testimony of an economist as to Dennis's earning capacity?

### DISCUSSION AND DECISION

Bryant-Poff argues that the trial court erred in refusing to grant its motion for judgment on the evidence for several reasons. Because we reverse on the basis of the Indiana Supreme Court's adherence to the open and obvious rule in the products liability-negligence area of the law, we discuss only this aspect of the issue.

Bryant-Poff correctly asserts that Indiana case law has established the open and obvious rule in our jurisprudence. *See, e.g., Bemis Company, Inc. v. Rubush,* (1982) Ind., 427 N.E.2d 1058, (U.S. appeal pending); *Shanks v. A.F.E. Industries, Inc.,* (1981) Ind., 416 N.E.2d 833; *Coffman v. Austgen's Electric, Inc.,* (1982) Ind.App., 437 N.E.2d 1003. That rule was set forth clearly and unequivocally by Justice Pivarnik in *Bemis* at 427 N.E.2d 1061: "In the area of products liability, based upon negligence or based upon strict liability under § 402A of the Restatement (Second) of Torts, to impress liability upon manufacturers, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product." Although there was evidence from which the jury could have concluded that the unguarded chain and sprocket mechanism was unreasonably dangerous in light of industry regulations and standards at the time it was designed and manufactured, we do not read *Bemis,*

*Shanks,* and *Coffman* to permit liability to attach when that defect should have been obvious to the party injured. In *Coffman* a twelve-year-old boy was injured when the power suddenly went on as he was attempting to remove a bird's nest from a hopper bin on a malfunctioning cross-auger shaft. The Coffmans brought suit against the manufacturer alleging negligence in failure to place a guard over the auger shaft and improper design of a control panel which permitted the inadvertent operation of the auger. Having cited the open and obvious rule of *Bemis,* Judge Hoffman wrote, "Clearly, the potentiality of danger inherent in sticking one's hand in an auger which has the propensity to move is open and obvious." 437 N.E.2d at 1008. As a matter of law, therefore, we must hold that the chain and sprocket mechanism in the case at bar was an open and obvious danger upon which liability against the manufacturer may not be premised.

The trial court erred in failing to grant Bryant-Poff's motion for judgment on the evidence.

Judgment reversed.

NEAL and ROBERTSON, JJ., concur.